UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| USPG PORTFOLIO TWO, LLC | : | Case No. 3:11-cv-100 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.) | : | |
| Defendant. | : | |

**DECISION AND ENTRY: (1) GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT IN PART AND DENYING IT IN PART (DOC. 32); AND (2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING IT IN PART (DOC. 36)**

This case is before the Court on the Motion for Partial Summary Judgment filed by Plaintiff USPG Portfolio Two, LLC ("USPG") (Doc. 32) and the Cross-Motion for Summary Judgment filed by Defendant John Hancock Insurance Company (U.S.A.) ("John Hancock") (Doc. 36). John Hancock filed a Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment (Doc. 35) and USPG filed a Response to John Hancock's Cross-Motion for Summary Judgment (Doc. 38). Both parties filed Reply memoranda. (Docs. 37, 40). The Motions are now ripe for decision.

### I. FACTS[1]

This case is a contract dispute between USPG and John Hancock. In 2004, USPG and the Manufacturers Life Insurance Company (U.S.A.) ("Manufacturers Life") entered into an agreement entitled "Open-End Mortgage, Security Agreement, and Fixture Filing"

---

[1] The facts set forth herein are taken from the parties' Statements of Proposed Undisputed Facts and Responses thereto. (Docs. 33, 35-1, 36-1, 38-1).

(the "Mortgage"). The Mortgage was given by USPG to Manufacturers Life in connection with a Promissory Note ("Note") executed by USPG in the original principal amount of $16,125,000.00. John Hancock is the successor in interest by merger to Manufacturers Life and acquired the Mortgage and Note when it merged with Manufacturers Life.

The Note and Mortgage were amended effective November 4, 2004 ("2004 Amendments"). Pursuant to the 2004 Amendments, the loan amount was increased by slightly over $2 million. On or about October 1, 2006, the parties entered into a Mortgage, Security Agreement and Fixture Filing which further amended the Mortgage (the "2006 Amendment").

The collateral given in the Mortgage presently includes two shopping centers—one commonly referred to as "Bechtle Crossing Shopping Center" ("Bechtle Crossing") in Springfield, Ohio; the other commonly known as well as Crossing Meadows Shopping Center ("Crossing Meadows") in Onalaska, Wisconsin. The Mortgage collectively refers to the shopping centers, and all other real property and personalty subject to the Mortgage, as the "Mortgaged Property." (Doc. 32-1).

In July 2010, USPG requested that it be allowed to obtain a release of the mortgage lien on Bechtle Crossing and provide two parcels of real property as substitute collateral in place of Bechtle Crossing. USPG contends that a provision in the Mortgage governing the substitution of collateral permits the release of individual parcels of property subject to the mortgage lien. In total, that provision reads:

> <u>Substitution of Collateral</u>. In the event that [USPG] desire[s] [John Hancock] to release the Mortgaged Property from the lien of this Mortgage without prepaying the Note, Lender [John Hancock] shall release the lien of this Mortgage as security for the Indebtedness upon [USPG] providing substitute security for the Indebtedness by (a) substituting another parcel or parcels of real estate in place of the Mortgaged Property to be released or (b) substituting Qualified Securities in place of the Mortgaged Property to be released (the "Substitute Property"). The Substitute Property must be acceptable to [John Hancock], and provide, among other things (i) a value equal to or greater than, and (ii) debt service coverage equal to or greater than the Mortgaged Property to be released. "Qualified Securities" means direct obligations of, and obligations on which the full and timely payment of principal and interest is unconditionally guaranteed by, the full faith and credit of the United States of America.

(Doc. 32-1) (hereinafter referred to as the "Substitution provision").

John Hancock disputes USPG's construction of the Substitution provision and argues that it does not allow a release of individual parcels of property from the Mortgage. John Hancock contends that the Substitution provision only permits the release of all property subject to the Mortgage upon the pledge of appropriate substitute collateral for all such property. As a result of this interpretation of the Substitution provision, John Hancock refused to accept the proposed substitute property as collateral and refused to release Bechtle Crossing from the Mortgage. The parties also dispute whether USPG can combine real property and Qualified Securities as Substitute Property.

As a result of this dispute, UPSG originally filed this action seeking a declaration of its rights under the Mortgage in the District Court of Dallas County, Texas. (Doc. 1-4). John Hancock removed the case from the Texas state court to the United States District Court, Northern District of Texas, Dallas Division. (Doc. 1). John Hancock then moved

to transfer the case from the District Court in Texas to this Court. (Doc. 7). The District Court in Texas granted John Hancock's Motion (Doc. 18), and the case is now before this Court on the parties' Motions (Docs. 32, 36), which are fully ripe for decision.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

"Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Technologies, Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010) (citing Fed. R. Civ. P. 56(e)(2)). Instead, the party opposing summary judgment "must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." *Id*. (citing Fed. R. Civ. P. 56(e)(2)).

## III. ANALYSIS

The arguments presented by the parties address two issues of contract interpretation and seek a declaration regarding the following: (A) whether the Substitution provision allows the release of an individual parcel of property subject to the Mortgage upon USPS pledging substitute property therefore; and (B) whether the Substitution provision allows USPG to substitute a combination of real estate and Qualified Securities as security for the individual parcel of real property USPG seeks released from the mortgage lien.

The parties agree that Ohio law governs the interpretation of the Mortgage in this case. In interpreting a contract, courts must "give effect to the intent of the parties to that agreement." *Martin Marietta Magnesia Specialties, L.L.C. v. Pub. Utilities Comm'n*, 129 Ohio St.3d 485, 490, 954 N.E.2d 104 (Ohio 2011). To do so, "[t]he court examines the contract as a whole and presumes that the intent of the parties is reflected in the language used in the agreement." *Id*. (citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 797 N.E.2d 1256 (Ohio 2003)). Courts employ "the plain and ordinary meaning of the language used in the [contract] unless another meaning is clearly apparent from the contents of the [contract]." *Westfield*, 100 Ohio St.3d at 219 (citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (Ohio 1978)); *see also Safeco Ins. Co. v. White*, 122 Ohio St.3d 562, 913 N.E.2d 426 (Ohio 2009).

Where the language used is clear, such language controls, and the court cannot look at materials outside of the contract to determine the parties' intent. *Id.*; *see also Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 404, 953 N.E.2d 285 (Ohio 2011).

"As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Sunoco*, 129 Ohio St.3d 404 (quoting *Westfield*, 100 Ohio St.3d 216). Where an ambiguity does exist, the court can "consider extrinsic evidence to ascertain the parties' intent[,]" but in doing so, cannot "alter a lawful contract by imputing an intent contrary to that expressed by the parties." *Westfield*, 100 Ohio St.3d at 219-220 (citing *Blosser v. Enderlin*, 113 Ohio St. 121, 148 N.E. 393 (Ohio 1925).

### A. <u>Substitution of Collateral</u>

First, the parties dispute whether the Substitution provision allows for the release of an individual parcel of property subject to the mortgage lien where USPG provides appropriate substitute collateral for such individual parcel of property. In its essential terms, the Substitution provision states that USPG is entitled to a release of "the *Mortgaged Property* from the lien of this Mortgage without prepaying the Note . . . by (a) substituting another parcel or parcels of real estate [acceptable to John Hancock] in place of the Mortgaged Property *to be released* or (b) substituting Qualified Securities [acceptable to John Hancock] in place of the Mortgaged Property *to be released*." (Emphasis added).

In support of its contention that the Substitution provision allows for the release of individual items of property upon providing appropriate substitution therefore, USPG seizes upon the above emphasized phrase "to be released." USPG contends that such phrase shows "the clear intent . . . to allow USPG to obtain a release of some, but not all, of the Mortgaged Property."

John Hancock seizes upon use of the above emphasized term "Mortgaged Property," as well a provision in the Mortgage stating that all real property and personalty subject to thereto "are collectively called Mortgaged Property in this Mortgage[.]" John Hancock contends that use of the collective term "Mortgaged Property" in the Substitution provision requires that *all* of the "Mortgaged Property" be released and substitute collateral be provided for all of the "Mortgaged Property." Further, John Hancock argues that the phrase "to be released" simply "refers to the fact that the existing 'Mortgaged Property' is to be released upon the substitution."

After reviewing the Mortgage as a whole, the Court agrees with USPG that the plain, ordinary and most logical reading of the Substitution provision, giving meaning to all of the language used therein, allows for the release of individual parcels of property as opposed to requiring the release of all property subject to the mortgage. Use of the phrase "to be released" contemplates certain property subject to the Mortgage lien remaining subject thereto, while other certain Mortgaged Property is released upon USPG's pledge of adequate substitute property as collateral. USPG's construction of the provision gives substance to the phrase "to be released," as opposed to rendering it superfluous.[2]

Accordingly, Plaintiff USPG's Motion for Partial Summary Judgment in this regard is **GRANTED**. Defendant John Hancock's Cross-Motion for Summary Judgment in this regard is **DENIED**.

---

[2] The construction advanced by John Hancock would not be hindered, and may possibly be enhanced, if the Substitution provision omitted the phrase "to be released," and instead, provided that USPG is entitled to a release of "the Mortgaged Property from the lien of this Mortgage without prepaying the Note . . . by (a) substituting another parcel or parcels of real estate in place of the Mortgaged Property or (b) substituting Qualified Securities in place of the Mortgaged Property."

## B. Combining Real Property and Securities as Substitute Collateral

Next, the parties dispute whether the Substitution provision requires USPG to offer either real property or Qualified Securities[3] as Substitute Property, or whether the Substitution provision allows USPG to offer a combination of real property and Qualified Securities as Substitute Property. Again, the essential terms of the Substitution provision provide that USPG is entitled to a release of "the Mortgaged Property from the lien of this Mortgage without prepaying the Note . . . by (a) substituting another parcel or parcels of real estate in place of the Mortgaged Property to be released *or* (b) substituting Qualified Securities in place of the Mortgaged Property to be released." (Emphasis added).

USPG argues that use of the word "or" between part (a) and part (b) is inclusive, *i.e.*, that USPG may pledge a combination of real estate and Qualified Securities as Substitute Property. USPG contends that the provision was intended to allow it to pledge Qualified Securities in an effort "to close any perceived shortfalls between the value of proposed substitute [real estate] and the 'Mortgaged Property' to be released." (Doc. 32). John Hancock, on the other hand, contends that the "or" between part (a) and part (b) is exclusive, *i.e.*, that Substitute Collateral must "be either all real property or all Qualified Securities." (Doc. 35).

The Court concludes that the "or" between part (a) and part (b) is exclusive, and that the Substitution provision requires that either all real property be pledged as Substitute Property or all Qualified Securities be pledged as Substitute Property. USPG's contention

---

[3] Qualified Securities are defined in the Substitution provision as "direct obligations of, and obligations on which the full and timely payment of principal and interest is unconditionally guaranteed by, the full faith and credit of the United States of America."

may have more merit if the Substitution provision read that Mortgaged Property could be released "by substituting another parcel or parcels of real estate or Qualified Securities in place of the Mortgaged Property to be released." However, as written here, use of the phrase "in place of the Mortgaged Property to be released" in both part (a) and part (b) evidences an intent to provide two distinct methods of pledging Substitute Property, *i.e.*, by either: "(a) substituting another parcel or parcels of real estate in place of the Mortgaged Property to be released or (b) substituting Qualified Securities in place of the Mortgaged Property to be released."

Accordingly, Plaintiff's Motion for Partial Summary Judgment in this regard is **DENIED**. Defendant's Motion for Summary Judgment in this regard is **GRANTED**.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiff USPG's Motion for Partial Summary Judgment (Doc. 32) is **GRANTED** in part and **DENIED** in part. Defendant John Hancock's Cross-Motion for Summary Judgment (Doc. 36) is **GRANTED** in part and **DENIED** in part. As a result, the Court finds as follows: (A) the Substitution provision allows for the release of individual parcels of property; and (B) the Substitution provision requires that either all real property be pledged as Substitute Property or all Qualified Securities be pledged as Substitute Property.

**IT IS SO ORDERED.**

Date: 1/20/2012

Timothy S. Black
United States District Judge